**Exhibit A**

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS _____
24CV003839-590

|  |  |
|---|---|
| COREY HEMPHILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| CHARLOTTE-MECKLENBURG ) | |
| BOARD OF EDUCATION, and ) | |
| ) | |
| CHRISTOPHER K. BERNARD ) | |
| individually and in his official ) | |
| capacity ) | |
| ) | |
| Defendants. ) | |

Plaintiff, requesting a jury trial, alleges the following against Defendants.

## INTRODUCTION AND JURISDICTION

1. This is an action for violation of the due process clause of the Fourteenth Amendment under 42 U.S.C.§1983, and for Negligent and Intentional Infliction of Emotional Distress under state law.

2. Plaintiff is a citizen and resident of Mecklenburg County. His employment began with Charlotte-Mecklenburg Schools (CMS"), a division of the Charlotte-Mecklenburg Board of Education ("CMBOE") in 2019 as a Behavioral Modification Technician I.("BMT")

3. As a BMT, Plaintiff was responsible for providing support to CMS schools in addressing student misconduct, assaultive behaviors, breaking up fights, managing threats to schools and dealing with emotional disabled students who become verbally/physically aggressive while in school.

4. However dealing with emotionally disabled students was not part of the Plaintiff's job description, which goes to the negligence of CMS. He was required to go inside the Exceptional Child (EC) classroom full-time at James Martin during the 2021-2022 school year, he was also hired at the Metro School with no CPI training.

5. Plaintiff alleges that CMBOE failed to properly train him and other similarly situated BMT employees throughout the school district over a period of at least three (3) years. This failure to ensure BMT employees were properly trained put the Plaintiff and other BMT employees at personal risk of harm and in addition put the schools they served in a "non-compliant" status. This failure to train` constituted a deprivation, involved egregious conduct under color of law with regard to a property right of Plaintiff that shocks the conscience and thus violated the substantive due process protections of the Fourteenth Amendment, and also constituted intentional infliction of emotional distress.

6. There are no administrative remedies to exhaust regarding his claims.

7. This Court has concurrent jurisdiction over the federal claims under 42 U.S.C. § 1988 claims under Chapter 7A of the General Statutes.

## II. PARTIES

8. Plaintiff is an African American citizen and resident of Mecklenburg County, North Carolina

9. Defendant Charlotte-Mecklenburg Board of Education is a body corporate whose board members are duly elected by the citizens of Mecklenburg County and is charged by state law with control and operation of the public schools in the City of Charlotte and Mecklenburg County known as the Charlotte-Mecklenburg Schools or "CMS."

2

10.     Defendant, Christopher K. Bernard, ("Bernard") on information and belief, is a citizen and resident of Mecklenburg County and, at all times relevant, was a Principal employed by CMS and was under the guidance and control of CMBOE.

11.     Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

12.     Defendants are "persons" within the meaning of the 42 U.S.C. § 1983, and each has the capacity to be sued for the claims presented in this action.

13.     Under N.C. Gen. Stat. § 115C-40, the Board has general control and supervision of all matters pertaining to the public schools of Mecklenburg County, including the authority to prosecute or defend suits for or against the Board.

14.     The Board has waived the defense of sovereign immunity by the purchase of liability insurance.

15.     A portion of Bernard's actions complained of were taken under color of state law for purposes of 42 U.S.C. § 1983.

## FACTS

16.     Plaintiff began working for CMS as a BMT in the summer of 2019.

17.     Plaintiff while employed for CMS was assigned as a BMT at James Martin Middle School, a Title I school. In addition to his duties as a BMT, he served as the school's boys basketball coach.

18.     According to the CMS Job Description for Behavior Modification Technician, a BMT "promotes the safety, well-being, and educational success of students by implementing behavior management programs and working as a team member to increase social, behavioral and academic skills needed for success."

19.     Other duties and responsibilities as noted in the job description include but are not limited to assist with day-to-day discipline issues of students, responds to crisis and routine calls for assistance and diffuses and de-escalates potentially volatile situations.

20.     Some of the physical requirements of a BMT include but are not limited to regularly have sufficient physical strength and ability to exert physical effort as needed for crisis intervention and be able to work with risk for potential job-related injury such as physical confrontations.

21.     In addition to the items listed on the BMT Job Description, the Plaintiff and other BMT employees accordingly to CMS policy were supposed to undergo and attend Active Nonviolent Crisis Intervention (CPI) training within thirty (30) days of employment.

22.     Upon Plaintiff's hire at James Martin Middle School (JMMS) he was never informed or made aware of the need for him to take the CPI training. He only became aware of the requirement to be trained during a subsequent investigation.

23.     Plaintiff worked without incident up until December of 2021. On December 17, 2021, an incident took place at JMMS involving a student with known behavioral issues.

24.     Plaintiff was performing his job duties and attempted to divert the student in question from an area in school and that student was non-compliant with his commands.

25.     Ultimately based upon the student's conduct and failure to comply, Plaintiff was forced to take measures to restrain and divert that student. As a result of this incident, CMS by and through its agent Christopher Bernard, the Principal at JMMS decided to report Plaintiff to human resources.

26.     The school resource Officer James conducted an investigation into the incident. This investigation included watching video tape from the school camera and interviewing

persons involved in the matter.

27.     Based upon the information gathered by Officer James, the police report she prepared corroborated the account of the incident according to the Plaintiff. Before Plaintiff's return to school following the suspension, he watched the video of the incident with the Human Resources Director and other human resources personnel in the beginning when he was initially contacted about the matter and it was clear from the tape that it had been "edited".

28.     Plaintiff learned that the video was edited on the "determination call" with the Human Resources Manager Michele Jean-Jumeau  and Defendant Bernard.

29.     Investigator Theresa Adams who was assigned to Plaintiff as the investigator and was the point of contact during the investigation, suddenly stopped communication with Plaintiff with no explanation and Michele Jean-Jumeau assumed the role as the investigator. Ms. Jean-Jumeau knew that Defendant Bernard tampered with the video.

30.     Officer James told the Plaintiff that he was the "victim" and indicated that the edited video constituted tampering with evidence.

31.     Officer James and Principal Bernard met with the mother of the child in question following the investigation to discuss the matter. Officer James gave an accurate account of the investigation and described the conduct of the child and Principal Bernard was visibly upset and enraged over this depiction.

32.     A second zoom call was held with Michele Jean-Jumeau, the Human Resources Manager and Defendant Bernard and that person falsely indicated that due to Plaintiff using "excessive force" including allegedly grabbing the student by neck he would be issued a written warning that would become part of his permanent file with CMS.

33.    Plaintiff disputed the characterization made by Ms. Jean-Jumeau regarding "grabbing the student by the neck" and she recanted and admitted that it was the top of the book bag. However, this false statement about grabbing the student by the neck was still falsely included in the written warning in Plaintiff's "permanent file".

34.    Plaintiff indicated during this meeting that that the video had been edited and the human resources manager admitted that he was only shown the "short version" of the video and that it had been edited. The only persons with access to the video were Officer James and Principal Bernard. Principal Bernard ultimately made the decision to report this matter to human resources and to discipline Plaintiff based on the false narrative stated above.

35.    Officer James admitted to Plaintiff that he was the "victim" in this situation and he should have never been investigated or suspended. The student should have been investigated and consequences taken as a result of his assaultive behavior towards Plaintiff.

36.    The investigation conducted by Officer James and the police report she wrote indicated that Plaintiff was the victim and was struck five (5) times by the student in question.

37.    During the time Plaintiff was suspended, his coaching duties were taken from him and he had no more contact with his student athletes. This was a very traumatic experience for him as he had bonded with the students and they were not given any explanation for his departure. This caused him more emotional distress and anguish over the manner in which he was treated by Bernard and CMS.

38.    Plaintiff sought therapy and mental health treatment as a result of the incidents in questions.

39.    Following his suspension, he was forced to come back to work in an environment

that was filled with lies and allegations. He was filled with high anxiety and emotional distress. He endured tremendous difficulty sleeping and waking up in the middle of the night. He was severely pained to know all that he had given to the students and to have it ripped away because of lies and deceitful conduct.

40.     At the time of his hire and for the first three (3) years of his employment, he was never informed by CMBOE/CMS that as part of his job as a BMT he was required to attend mandatory training for his position.

41.     As an employee of CMS, the Plaintiff was put in a hostile environment without proper training. He was into his third year working in CMS before he was informed that as part of his job duties, he needed to attend a Mandatory Training for his position as a BMT at a Title 1 school. There were approximately 26 guns found on CMS properties during 2022 alone. There have been multiple assaults on staff, numerous fights, gang activity, threats to shoot the school, and intimidation from students towards teachers to name a few of the types of negative, hostile and threatening behaviors.

42.     During the course of the investigation into the matters involving the Plaintiff and his disciplinary process at James Martin School, it was revealed that approximately seventy (70) BMT employees in CMS Title 1 Schools who had not been CPI trained, like the Plaintiff. The average number of BMT personnel per school is 1-2.

43.     As a result of this failure of CMBOE/CMS to train its BMT employees, these Title 1 Schools were out of compliance, putting the Plaintiff and all similarly situated BMT employees at risk of harm as well as the students at these schools due to this lack of training.

44.     CPI training is mandatory for all BMT employees at Title 1 CMS Schools. On the CMS website under "My Talent" it is stated that CPI Training is a mandatory eight (8) hour

training.

45.     The Plaintiff was not made aware of this mandatory 8-hour requirement until he completed his CPI training. Following his training session, the CMS trainer falsely wrote on his CPI card that he completed "8 hours" of training when in fact the training was less than 8 hours.

46.     The Plaintiff received an email from the CMS Human Resources Manager Michele Jean-Jumeau to inform him of the date, location and time of his CPI training session. In this message it was noted that the hours of training were 9 am until 1 pm (4 hours, not 8 as required). The training class ended at 12:45 pm. The trainer was rushing because she indicated that she had another training at another school when she left the class attended by the Plaintiff.

47.     The deception and failure of CMS was intentional because of other examples of inadequate training. Another CMS employee named Alexis Blue (female) worked with the Plaintiff at James Martin Middle School, was hired in the summer of 2021. Pursuant to CMS guidelines, CPI training must be completed within thirty (30) days of hiring or your school is out of compliance. She received her CPI Training on February 21, 2022 and her hours of training were from 8 am until 1 pm (5 hours, not 8 as required). This was well after 30 days of hire and also after Plaintiff's incident and CMS being aware of the training deficiencies in the school and throughout the district.

48.     In addition, the Assistant Principal at James Martin Middle School, Mr. Evans informed the Plaintiff that his CPI card was expired during the time of the incident.

49.     There were other issues associated with the investigatory process involving the Plaintiff's case. According to CMBOE/CMS policy, the incident in question was supposed

to be documented in the Incident Management System by the Principal (Bernard).

50.     The PowerSchool Incident Management System indicates that "all discipline and truancy data should be coded into the Incident Management to ensure consistency in data reporting for federal and state requirements."

51.     The incident involving the Plaintiff was not properly reported into this Incident Management System.

52.     Upon Plaintiff's return to school following his suspension, the school administrators informed him that they were unaware of the case and his situation because the Principal (Bernard) told everyone that he was taking care of everything. The Assistant Principal, the Dean of Students and Officer James all confirmed this with the Plaintiff.

53.     There was no incident recorded in PowerSchool as required by law, evidence that the videotape was tampered with, no NCI/CPI training as required by law, lies and deception by CMS officials, CMS and dozens of schools out of compliance, deception in the reporting of CPI training hours has caused and continues to cause Plaintiff mental anguish, damages, pain and suffering due to the actions of CMS officials.

54.     As a result of the actions of CMS and Bernard, Plaintiff suffered extreme and severe emotional distress given the nature of the circumstances from investigation and the intentional acts of Bernard as part of the transaction that forms the basis of this claim.

55.     The Plaintiff has suffered and continues to suffer to this day mental anguish and continues to deal with feelings of not being in the right place with his thoughts and feelings.

56.     He was the head coach of the Middle School Basketball team and knowing that his team needed him and that he could not do anything to assist them due to the processes he was wrongfully put through by Principal Bernard and others at the school and within CMS.

57.     Plaintiff continues to experience sleepless nights and waking up in the middle of the night due to this incident.

58.     Plaintiff continues to experience a loss of appetite knowing that his reputation and character have been impugned and tarnished by the actions of CMS which continues to make him sick to his stomach knowing the lies and deception perpetrated against him.

59.     As a result of the actions taken against him he has sought therapy and has met with a therapist to address his mental issues that continue to affect him.

60.     Prior to his departure from CMS, he exercised his rights to take mental health days to address his situation.

61.     In addition, Plaintiff had a problem with being a paid suspension as he could not bond with his players and continue the mentoring that he once did prior to this unfortunate incident.

62.     The incident in question took place on December 17, 2021, a zoom call was held on January 3, 2022 and Plaintiff was asked to turn in his Chrome Book on January 4, 2022 and he was not allowed to return to the school or any CMS campus, make no or have any contact with any CMS personnel or student and was not allowed to coach his team. The final basketball game was February 3, 2022 and he was not allowed to participate in that game.

63.     Knowing that the Plaintiff was put into a dangerous environment five (5) days a week for almost three (3) years, without the proper training to deal with the numerous issues faced by himself and other BMT employees continues to give him the chills.

64.     Knowing that the Plaintiff has knowledge of students bringing guns to school, engaging in numerous fights, and the fact that he was not properly trained was negligence

on the part of CMBOE/CMS.

65.     Lashell Laughlin, a 20 plus year CMS employee was upset with how Plaintiff was

being treated as a result of the incident at James Martin Middle School. On her own, she

reached out to her good friend in Human Resources, to enquirer about his case while he

was still on suspension. Her good friend was not over his case, but she was able to get

information back to Ms. Laughlin and she also stated that she is not supposed to give out

this information. Ms. Laughlin was told that, "We" as in CMS dropped the ball. Because

of the time that Mr. Hemphill was employed, it is no explanation that can be given for him

not being CPI Trained. She also stated, if he were hired that same year, we could say "due

to Covid" as to why he hasn't been trained, but being he is in his 3rd year, "We" simply

dropped the ball."

**FIRST CAUSE OF ACTION**
**(SUBSTANTIVE DUE PROCESS VIOLATION -42 U.S.C. § 1983; CONSTITUTION**
**OF THE UNITED STATES, AMEND. XIV)**

66.     Plaintiff incorporates all prior paragraphs by reference.

67.     Under the Due Process Clause of the Fourteenth Amendment, Plaintiff had the

right to be free from malicious intentional conduct at the hands of public-school

employees such as Defendant Bernard.

68.     As a state actor, Defendant Bernard's actions as an agent of CMS in altering the

video and painting Plaintiff in a false light were taken under color of state law and

constituted an attempt to take property from Plaintiff without notice to him, in violation

of his right to Due Process of law under the Fourteenth Amendment.  Such conduct is

actionable under 42 U.S.C. § 1983.

69.    Defendant Bernard, a state actor, caused through his affirmative acts the deprivation of Plaintiff's rights, privileges, or immunities secured by the Constitution of the United States, namely Plaintiff's substantive due process right against state-actor conduct that deprives one from equal protection under the law.

70.    Further, Defendant Bernard's conduct as an agent of CMS in willfully altering the investigation video by Officer James was so beyond societal norms as to "shock the conscience" and thus constituted a violation of substantive due process that is also actionable under 42 U.S.C. § 1983.

71.    Plaintiff brings this claim against CMS and Defendant Bernard in his individual and official capacity.

72.    Defendant CMBOE, a state actor, subjected the Plaintiff to unlawful actions of its agent Defendant Bernard and violated his right as a public-school employee by not allowing him to remain actively engaged in his position as a BMT and basketball coach.

73.    Furthermore, the evidence in this case shows that Plaintiff and other BMT employees throughout CMS were not properly trained and had not been instructed by CMBOE to attend training or even made aware of the CPI training in order to be properly equipped to protect themselves, the students, the schools and their staff from difficulties and challenges associated with operating a Title I school.

74.    Plaintiff believes and therefore avers that Defendant Board has unconstitutional customs or policies of:

    a.  Failing to provide BMT employees like Plaintiff proper education and training for their positions to protect them, students, faculty and staff from persons and situations that can cause them harm  and to be free from said conduct; and

b. Failing to implement policies and procedures to ensure that BMT employees such as Plaintiff receive the necessary and training within the first thirty (30) days of hire for these roles to ensure that the schools are compliant with this policy and that its employees are adequately trained and certified to address the issues that will arise during the course of a school year.

75. Defendant Board is a policymaker for the purpose of implementing Defendant Board's unconstitutional policies and customs.

76. Defendant Board's actions in failing to ensure Plaintiff and other BMT employees receive the proper and mandated training caused Plaintiff harm and severe emotional distress and shocks the conscience, and nothing less.

77. Plaintiff has suffered severe and permanent psychological damages, physical harm, and emotional distress as a direct and proximate result of Defendant Board's conduct and violations of Plaintiff's Fourteenth Amendment rights.

78. Plaintiff is informed and believes that he is entitled to a judgment against Defendant Board for compensatory damages, interest, costs, and attorneys' fees and against Defendant Bernard for compensatory damages, interest, costs, and attorneys' fees.

79. Plaintiff also seeks attorney's fees under 42 U.S.C. §1988.

**SECOND CAUSE OF ACTION**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

77. Plaintiff incorporates all prior paragraphs by reference.

78. Defendant Bernard knew of the existence of the video recording of the incident involving Plaintiff on December 17, 2021. Defendant Bernard upon information and belief

cause said video to be altered in such a way to negatively affect Plaintiff and his employment with CMS.

79.     Defendant Bernard used the altered video as part of his rationale to create a false narrative and paint Plaintiff in a negative light in his employment with CMS and left this legacy of lies in his permanent CMS personnel file.

80.     Bernard did so without Plaintiff's knowledge or consent.

81.     The conduct of Defendant Bernard was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

82.     Defendant Bernard's conduct was intended to cause or was reckless in regard to the likelihood of causing Plaintiff severe emotional distress.

83.     Defendant Bernard's conduct did cause Plaintiff to suffer severe emotional distress.

84.     As a result of the conduct of Defendant Bernard, Plaintiff suffered emotional distress that no reasonable person could be expected to endure in that Plaintiff suffered harm to his emotional and psychological wellbeing resulting from the emotional impact of the actions by Defendant Bernard.

85.     Defendant Bernard had a duty to exercise ordinary prudence to protect Plaintiff from foreseeable harm.

86.     Defendant Bernard's conduct as alleged hereinabove breached his duty of care owed to Plaintiff and proximately caused Plaintiff to experience severe emotional distress.

87.     Defendant Bernard could reasonably foresee that his negligent conduct would cause Plaintiff to suffer severe emotional distress.

88.     Defendant Bernard's conduct proximately caused Plaintiff to experience

severe emotional distress.

89.     As a result of the conduct of Defendant Bernard, Plaintiff suffered emotional distress that no reasonable person could be expected to endure in that Plaintiff suffered harm to his emotional and psychological wellbeing.

90.     Defendant Bernard acted with actual and legal malice when he intentionally altered the videotape, and then submitted the altered tape as part of the investigation concerning Plaintiff's encounter with the student which he used to negatively impact his employment.

91.     Plaintiff sues Defendant Bernard individually on this claim, as he acted with malice and beyond the scope of his lawful authority in altering a videotape and submitting it as part of an investigation led by police officer in the course of his duties.

92.     Plaintiff seeks and is entitled to all damages allowed under the law for intentional infliction of emotional distress, including punitive damages against Defendant Bernard individually under Chapter 1D or the General Statutes.

### THIRD CAUSE OF ACTION
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

93.     Plaintiff incorporates all prior paragraphs by reference.

94.     The conduct of Defendant Bernard was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

95. Defendant Bernard's conduct was intended to cause, or was reckless in regard to the likelihood of causing Plaintiff severe emotional distress.

96. Defendant Bernard's conduct did cause Plaintiff to suffer severe emotional distress.

97.     As a result of the conduct of Defendant Bernard, Plaintiff suffered emotional distress that no reasonable person could be expected to endure in that Plaintiff suffered harm to his emotional and psychological well-being resulting from the emotional impact

of the conduct by Defendant Bernard.

98.     Defendant Bernard had a duty to exercise ordinary prudence to protect Plaintiff from foreseeable harm.

99.     Defendant Bernard's conduct as alleged hereinabove breached his duty of care owed to Plaintiff and proximately caused Plaintiff to experience severe emotional distress.

100.    Defendant Bernard could reasonably foresee that his negligent conduct would cause Plaintiff to suffer severe emotional distress.

101.    Defendant Bernard's conduct proximately caused Plaintiff to experience severe emotional distress.

102.    As a result of the conduct of Defendant Bernard, Plaintiff suffered emotional distress that no reasonable person could be expected to endure in that Plaintiff suffered harm to his emotional and psychological well-being.

## JURY DEMAND

Plaintiff demands that all matters be tried before a jury of his peers.

## PRAYER FOR RELIEF

Upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

a.  Compensatory damages;

b.   The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 1988;

c. Punitive damages due the intentional, extreme and reckless conduct of all Defendants in this action; and

d .For such other and further relief as to which Plaintiff may be entitled or as to the Court may seem proper and just.

Respectfully submitted this 28th day of December 2023.

THE MONTGOMERY LAW FIRM, PLLC

BY:    /s/ Eric A. Montgomery
ERIC A. MONTGOMERY, NC Bar No. 38951
*Attorney for Plaintiff*
6135 Park South Drive, Suite 510
Charlotte, North Carolina 28210
Telephone:    (704) 749-3135
Facsimile:    (704) 228-7157
E-mail:    eric@themlawfirm.com

Mecklenburg County Clerk of Superior Court

| **STATE OF NORTH CAROLINA** | File No. 24CV003839-590 |
|---|---|

**MECKLENBURG** County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| Name And Address Of Plaintiff 1<br>Corey Hemphill<br>9215 Grand Valley Drive<br>Charlotte, NC 28213 | **GENERAL<br>CIVIL ACTION COVER SHEET**<br>☒ INITIAL FILING ☐ SUBSEQUENT FILING |
| Name And Address Of Plaintiff 2 | |

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

| | |
|---|---|
| Name And Address Of Defendant 1<br>Charlotte-Mecklenburg Board of Education d/b/a<br>Charlotte-Mecklenburg Schools<br>600 E. 4th Street<br>Charlotte, NC 28202 | Name And Address Of Attorney Or Party, If Not Represented<br>(complete for initial appearance or change of address)<br>Eric A. Montgomery, Esq.<br>6135 Park South Drive Suite 510<br>Charlotte, NC 28210 |
| Summons Submitted<br>☒ Yes ☐ No | Telephone No. 704-749-3135 | Cellular Telephone No. 704-712-2000 |
| Name And Address Of Defendant 2<br>Christopher K. Bernard<br>5627 Hammermill Drive<br>Harrisburg, NC 28075 | NC Attorney Bar No. 38951 | Attorney Email Address eric@themlawfirm.com |
| | ☒ Initial Appearance in Case ☐ Change of Address |
| | Name Of Firm The Montgomery Law Firm PLLC | Fax No. 704-228-7157 |
| Summons Submitted<br>☒ Yes ☐ No | Counsel For<br>☒ All Plaintiffs ☐ All Defendants ☐ Only: (list party(ies) represented) |

| ☒ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration |
|---|

**TYPE OF PLEADING**

(check all that apply)

| | |
|---|---|
| ☐ Amend (AMND) | ☐ Failure To State A Claim (FASC) |
| ☐ Amended Answer/Reply (AMND-Response) | ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR) |
| ☐ Amended Complaint (AMND) | ☐ Improper Venue/Division (IMVN) |
| ☐ Assess Costs (COST) | ☐ Including Attorney's Fees (ATTY) |
| ☐ Answer/Reply (ANSW-Response) (see Note) | ☐ Intervene (INTR) |
| ☐ Change Venue (CHVN) | ☐ Interplead (OTHR) |
| ☒ Complaint (COMP) | ☐ Lack Of Jurisdiction (Person) (LJPN) |
| ☐ Confession Of Judgment (CNFJ) | ☐ Lack Of Jurisdiction (Subject Matter) (LJSM) |
| ☐ Consent Order (CONS) | ☐ Modification Of Child Support In IV-D Actions (MSUP) |
| ☐ Consolidate (CNSL) | ☐ Notice Of Dismissal With Or Without Prejudice (VOLD) |
| ☐ Contempt (CNTP) | ☐ Petition To Sue As Indigent (OTHR) |
| ☐ Continue (CNTN) | ☐ Rule 12 Motion In Lieu Of Answer (MDLA) |
| ☐ Compel (CMPL) | ☐ Sanctions (SANC) |
| ☐ Counterclaim (CTCL) Assess Court Costs | ☐ Set Aside (OTHR) |
| ☐ Crossclaim (list on back) (CRSS) Assess Court Costs | ☐ Show Cause (SHOW) |
| ☐ Dismiss (DISM) Assess Court Costs | ☐ Transfer (TRFR) |
| ☐ Exempt/Waive Mediation (EXMD) | ☐ Third Party Complaint (list Third Party Defendants on back) (TPCL) |
| ☐ Extend Statute Of Limitations, Rule 9 (ESOL) | ☐ Vacate/Modify Judgment (VCMD) |
| ☐ Extend Time For Complaint (EXCO) | ☐ Withdraw As Counsel (WDCN) |
| ☐ Failure To Join Necessary Party (FJNP) | ☐ Other (specify and list each separately) |

NOTE: All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

Electronically Filed Date 4/1/2024 2:43 PM Mecklenburg County Clerk of Superior Court

| | CLAIMS FOR RELIEF | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☒ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☒ Other (specify and list each separately) |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☐ Contract (CNTR) | ☐ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| Date | Signature Of Attorney/Party |
|---|---|
| 01/23/2024 | |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s) | ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|---|
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| |
|---|
| |
| |
| |

*Defendant(s) Against Whom Crossclaim Asserted*

| |
|---|
| |
| |
| |

AOC-CV-751, Side Two, Rev. 3/19
© 2019 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

MECKLENBURG _____ County

File No.
**24CV003839-590**

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Corey Hemphill | **CIVIL SUMMONS** |
| Address<br>9215 Grand Valley Drive | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| City, State, Zip<br>Charlotte, NC 28213 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s)<br>Charlotte-Mecklenburg Board of Education d/b/a<br>Charlotte Mecklenburg Schools | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1<br>Christopher K. Bernard<br>5627 Hammermill Drive<br>Harrisburg, NC 28075 | Name And Address Of Defendant 2 |
|---|---|

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>The Montgomery Law Firm PLLC<br>6135 Park South Drive Suite 510<br>Charlotte NC 28210 | Date Issued<br>**1/24/2024** | Time<br>**7:48:40 am** ☐ AM ☐ PM |
|---|---|---|
| | Signature<br>**/s/ Mayding Rosas** | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time<br>☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

File No.
**24CV003839-590**

_____ MECKLENBURG _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Corey Hemphill

Address
9215 Grand Valley Drive

City, State, Zip
Charlotte, NC 28213

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

G.S. 1A-1, Rules 3 and 4

Name Of Defendant(s)
Charlotte-Mecklenburg Board of Education d/b/a
Charlotte Mecklenburg Schools

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
Christopher K. Bernard
5627 Hammermill Drive
Harrisburg, NC 28075

Name And Address Of Defendant 2

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)
The Montgomery Law Firm PLLC
6135 Park South Drive Suite 510
Charlotte NC 28210

Date Issued
**1/24/2024**

Time
**7:48:40 am** ☐ AM ☐ PM

Signature
**/s/ Mayding Rosas**

☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement

Time
☐ AM ☐ PM

Signature

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 12/22
© 2023 Administrative Office of the Courts

| RETURN OF SERVICE | |
|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 1.
☐ Other: *(type or print name)*

| Date Accepted | Signature |
|---|---|
| | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Acceptance of service.
Summons and complaint received by: ☐ Defendant 2.
☐ Other: *(type or print name)*

| Date Accepted | Signature |
|---|---|
| | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts